# IN THE UNITED STATES DISTRICT COURT

## OF THE

## SOUTHERN DISTRICT OF NEW YORK

_____

|  |  |  |
|---|---|---|
| | ) | |
| Hector Nicolas Duran Hernadez, | ) | |
| | ) | Case No. 25-cv-____ |
| | ) | |
| | ) | |
| v. | ) | A No. 241-102-187 |
| | ) | |
| LaDeon Francis, in his official capacity | ) | |
| as Acting Field Office Director of New York | ) | |
| Immigration and Customs Enforcement, | ) | |
| Kristi Noem, in his official capacity as | ) | |
| Secretary of Homeland Security; Pam Bondi, | ) | |
| in his official capacity as Attorney General. | ) | |
| | ) | |
| Respondents. | ) | |

_____

PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

**INTRODUCTION**

1. Petitioner Hector Nicolas Duran Hernandez, from here on, the Petitioner, is a national and citizen of El Salvador who is statutorily eligible for relief from removal in the form of Cancellation of Removal pursuant to INA & 240A(b)(1).

2. This petition is being filed by Lissette Marisol Barahona Zepeda, the Petitioner's wife, as next of friend. Mrs. Barahona Zepeda has "next friend" standing to bring this action under § 2241 because Petitioner is detained and without access to council or the ability to receive or send mail or sign documents. As his wife, Mrs. Barahona Zepeda is dedicated to act in the Petitioner's best interests. See Ross ex rel. Dunham v. Lantz, 408 F.3d 121, 123 (2d Cir. 2005) ("First, a 'next friend' must provide an adequate explanation … why the real party in interest cannot appear on his/her own behalf to prosecute the action. Second, the 'next friend' must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate[.]").

3. Mr. Duran Hernandez entered the United States without inspection four years ago and was never encountered by Border Patrol. On February 18, 2026, he was in Long Island, NY by New York immigration authorities.

4. Mr. Duran Hernandez has been at liberty in the United States for four years prior to his detention.

5. Accordingly, to vindicate petitioners statutory, constitutional and regulatory rights, this Court should grant the instant petition for writ of habeas corpus to ensure his continued freedom. Petitioner ask this court to find that the physical detention of petitioner is unlawful and order ICE to release him.

**JURISDICTION**

7.      This action arises under the Constitution of the United States and the Immigration And Nationality Act (INA), 8 U.S.C. § 1101 et seq.

8.      This court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

9.      This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 et. Seq, the Declaratory Judgement Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

**VENUE**

10. Venue is proper because petitioner is in the custody of the Immigration and Customs Enforcement and is being held at the 26 Federal Plaza, New York, NY, which is within the jurisdiction of this District.

11. Venue is also proper in the District because respondents are officers, employees, or agencies of the United States and petitioner resides in this District no real property is involved in this action, also a substantial part of the events or omissions giving rise to their claims occurred in this District. 28 U.S.C. § 1931(e).

**REQUIREMENTS OF 28 U.S.C. § 2243**

12.     The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." Id. (emphasis added).

13.     Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." Fay v. Noia, 372 U.S. 391, 400 (1963) (emphasis added).

**PARTIES**

14.     Petitioner Hector Nicolas Duran Hernandez is a native and citizen of El Salvador. He entered the United States 4 years ago without inspection or parole. He was encountered and detained by immigration authorities on February 18, 2026 as has been detained by ICE at 26 Federal Plaza since his arrest. When he is placed in removal proceedings, petitioner is eligible for I-589 relief in the form of asylum when given the opportunity before the courts.

15.     Respondent is sued in her official capacity as the Acting Director of the Field Office of U.S. Immigration and Customs Enforcement. Respondent is a legal custodian of Petitioner and has authority to release him.

16.     Respondent Todd M. Lyons is sued in his official capacity as the Acting Director of U.S. Immigration and Customs Enforcement. In this capacity, Respondents Lyons is the head of the federal agency responsible for all immigration enforcement in the United States. Respondent Lyons is a legal custodian of the Petitioner.

17.     Respondent Kristi Noem is sued in her official capacity as the Secretary of the U.S. Department of Homeland Security (DHS). In this capacity, Respondent Noem is responsible for the implementation and enforcement of the Immigration and Nationality Act, and oversees U.S. Immigration and Customs Enforcement, the component agency responsible for petitioner detention. Respondent Noem is a legal custodian of the Petitioner.

## STATEMENT OF FACTS

18.     Petitioner Hector Nicolas Duran Hernandez is a native and citizen of El Salvador. He entered the United States four years ago without inspection or parole. He was encountered and detained by immigration authorities on February 18, 2026 and has been detained by ICE at 26 Federal Plaza. When he is placed in removal proceedings, petitioner is eligible for I-589 relief in the form of asylum when given the opportunity before the courts.

19.     Petitioner is eligible for relief under I-589 which will be presented after he is afforded an appearance before an Immigration Judge.

20.    Petitioner is currently in the custody of ICE, as he is detained at the local field office and held by Immigration authorities.

21.    Aside from his entry into the United States without inspection, Petitioner has not violated any laws or ordinances.

22.    In the United States, Petitioner has worked to support himself and his family; he has worked different jobs to help his family and children.

**LEGAL FRAMEWORK**

24. The Immigration and Nationality Act ("INA") prescribes there basic forms of detention for the vas majority of noncitizens in removal proceedings.

25. First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in standard removal proceedings before an Immigration Judge ("IJ"). See 8 U.S.C. § 1229a. Individuals in § 1226(a) detention are generally entitled to a bond hearing at the outset of their detention, see 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention until their removal proceedings are concluded, See 8 U.S.C. § 1226(c).

26. Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals "seeking admission" referred to under § 1225(b)(2).

27. Third, the INA also provides for detention of noncitizens who have received a final order of removal from the United States. See 8 U.S.C. 1231(a)-(b).

28. Petitioner's case concerns the important distinction between § 1226(a) and § 1225(b)(2). Those provisions were enacted as part of the Illegal Immigration Reform and

Immigrant Responsibility Act (IIRIRA) of 1996. Pub. L. No. 104-208, Div. C, §§ 302-03, 110 Stat. 3009-546, 3009-582 to 3009-583, 3009-585. Section 1226 was recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

29. Following the enactment of the IIRIRA, the Executive Office for Immigration Review ("EOIR") drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225 and that they were instead detained under § 1226(a). See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite Being Applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspections) will be eligible for bond and bond redetermination").

30. Thus, in the decades that followed, most people who entered without inspection and were thereafter arrested and placed in standard removal proceedings were considered for release on bond and received bond hearings before an IJ, unless their criminal history rendered them ineligible. That practice was consistent with many more decades of prior practices, in which noncitizens who had entered the United States, even if without inspection, were entitled to a custody hearing before an IJ or other hearing officer. In contrast, those who were stopped at the border were only entitled to release or parole. See 8 U.S.C. § 1252(a) (1994). See also H.R. Rep. No 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a).

31. In recent months, Respondents adopted an entirely new interpretation of the statute, concluding that all noncitizens who entered the United States without admission or parole are considered applicants for admission, and are therefore ineligible for bond hearings before and Immigration Judge under 8 U.S.C. § 1225(b)(2)(A). Around the same time, ICE "in coordination with the Department of Justice" announced a corresponding policy that rejected the well-established understanding of the statutory and regulatory framework and reversed decades of practice. That policy claims that all persons who entered the United States without inspection shall now be deemed to be subject to mandatory detention under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended, the section of law under which they were previously released and affects those who have resided in the United States for years.

32. Cementing the policy and making it binding on all IJ's, the Board of Immigration Appeals ("BIA") recently issued a precedent decision: Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025). In Hurtado, the BIA found that any noncitizen who is present in the United States without having been inspected and admitted is subject to detention under 8 U.S.C. § 1225(b)(2), not § 1226(a).

33.    ICE and the DOJ have adopted this new and unprecedented position even though federal courts have rejected this exact conclusion. Most recently, Judge Kobick in the District of Massachusetts explicitly disagreed with Hurtado. Sampiao v. Hyde, 2025 WL 2607924 (D. Mass. Sept. 9, 2025). This follows an increasingly long line of decisions in this District rejecting ICE and DOJ's ever-expanding view of mandatory detention under §1225. See Gomes v. Hyde, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *8 (D. Mass.

July 7, 2025); Diaz Martinez v. Hyde, No. CV 25-11613-BEM, --- F. Supp. 3d ---- 2025 WL 2084238, at *9 (D. Mass. July 24, 2025); Doe v. Moniz, 2025 WL 2576819 (D. Mass. Sept. 5, 2025); Romero v. Hyde, 2025 WL 2403827 (D. Mass. Aug. 19, 2025);

Martinez v. Hyde, 2025 WL 2084238 (D. Mass. July 24, 2025); dos Santos v. Noem, 2025 WL 2370988 (D. Mass. Aug. 14, 2025).

34.     The Western District of Washington has also agreed. In the Tacoma, Washington, immigration court, IJs previously stopped providing bond hearings for persons who entered the United States without inspection and who have since resided here, reasoning such people are subject to mandatory detention under § 1225(b)(2)(A). There, in granting preliminary injunctive relief, the U.S. District Court for the Western District of Washington found that such a reading of the INA is likely unlawful and that § 1226(a), not § 1225(b), applies to noncitizens who are not apprehended upon arrival to the United

States. Rodriguez Vazquez v. Bostock, No. 3:25-CV-05240-TMC, --- F. Supp. 3d ---, 2025 WL 1193850 (W.D. Wash. Apr. 24, 2025).

35. DHS and DOJ's interpretation defies the INA. As the Sampiao and Rodriguez Vazquez courts explained, the plain text of the statutory provisions demonstrates that § 1226(a), not § 1225(b), applies to people like Petitioner.

36. Section 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen] is to be removed form the United States." These removal hearings are held under § 1229a, to "decid[e] the inadmissibility or deportability of a [] [noncitizen]."

37. The text of § 1226 also explicitly applies to people charged as being inadmissible, including those who entered without inspection. See 8 U.S.C. § 1226(c)(1)(E). Just

this year, Congress enacted subparagraph (E) in the Laken Riley Act to exclude certain noncitizens who entered without inspection from § 1226(a)'s default bond provision. Subparagraph (E)'s reference to persons inadmissible under § 1182(6)(A), i.e., persons inadmissible for entering without inspection, makes clear that, by default, such people are afforded a bond hearing under subsection (a). As the Rodriguez Vazquez court explained, "[w]hen Congress creates "specific exceptions" to a statute's applicability, it "proves" that absent those exceptions, the statute generally applies. Rodriguez Vazquez, 2025 WL 1193850, at *12 (citing Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 400 (2010)). Section 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole.

38. By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who very recently entered the United States. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2)(A); see also Diaz Martinez, 2025 WL 2084238, at *8 ("'[O]ur immigration laws have long made a distinction between those [noncitizens] who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality.'" (quoting Leng May Ma v. Barber, 357 U.S. 185, 187 (1958))). Indeed, the Supreme Court has explained that this mandatory detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine whether a [] [noncitizen] seeking to enter the country is admissible." Jennings v. Rodriguez, 538 U.S. 281, 287 (2018).

39. Accordingly, the mandatory detention provision of § 1225(b)(2) does not apply to people like petitioner, who have already entered and were residing in the United States at the time they were detained.

## CLAIMS FOR RELIEF

### Count 1: Violation of the Fifth Amendment Due Process Clause

40. Petitioner incorporates by reference the above paragraphs.

41. The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law."

42. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Moreover, "[t]he Due Process clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary or permanent." Id. at 693.

43. Respondents mandatory detention of Petitioner without consideration for release on bond or access to a bond hearing violates his due process rights.

### Count 2: Violation of 8 U.S.C. § 1226(a) Unlawful Denial of Release on Bond

44. Petitioner incorporates by reference the above paragraphs.

45. The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States prior to being detained by Defendants. Such noncitizens are detained under § 1226(a) and are eligible for release on bond, unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

46. Nonetheless, the Department of Justice has issued a decision binding on all IJs, rendering Petitioner ineligible for a bond hearing. Given the clear language in the Hurtado decision, there is no question that an IJ will find he or she does not have jurisdiction to consider Petitioner for release on bond.

**Count 3: Violation of the Bond Regulations, 8 C.F.R. §§ 236.1, 1236.1 and 1003.19**

**Unlawful Denial of Release on Bond**

47. Petitioner incorporates by reference the above paragraphs.

48. In 1997, after Congress amended the INA through IIRIRA, EOIR and the then-Immigration and Naturalization Service issued an interim rule to interpret and apply IIRIRA. Specifically, under the heading of "Apprehension, Custody, and Detention of [Noncitizens]," the agencies explained that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as [noncitizens] who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. at 10323 (emphasis added). The agencies thus made clear that individuals who had entered without inspection were eligible for consideration for

bond and bond hearings before IJs under 8 U.S.C. § 1226 and its implementing regulations.

49. The application of 1225(b)(2) to Petitioner, who should be bond eligible, unlawfully mandates his continued detention and violates 8 C.F.R. §§ 236.1, 1236.1, and 1003.19.

### Count 4: Violation of the Administrative Procedure Act Contrary to Law and Arbitrary and Capricious Agency Policy

50. Petitioner incorporates by reference the above paragraphs.

51. The APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

52. The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Defendants. Such noncitizens are detained under § 1226(a) and are eligible for release on bond, unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

53. Nonetheless, the DHS and Immigration Court will apply § 1225(b)(2) to Petitioner.

54. The application of that section to Petitioner is arbitrary, capricious, and not in accordance with law, and as such, it violates the APA. See 5 U.S.C. § 706(2).

### PRAYER FOR RELIEF

Wherefore, Petitioner respectfully request this Court to grant the Following:

(1) Assume jurisdiction over this matter;

(2) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

(3) Order that Defendants not remove Petitioner from the State of New Jersey;

(4) Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment as well as the relevant statute and regulations governing detention of noncitizens;

(5) Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately;

(6) Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

(7) Grant any further relief this Court deems just and proper.

Respectfully Submitted,

Date: **February 19, 2026**

Lissette Marisol Barahona Zepeda

on behalf of Hector Nicolas Duran Hernandez

A #241-102-187, as next of friend